IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JANIS DOWLING,

       Plaintiff,

vs.                                    CASE NO. 1:12-cv-57-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

       Defendant.

_____/

# O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability benefits. Doc. 1. The Commissioner has answered, Doc. 7, and both parties have filed briefs outlining their respective positions. Docs. 12, 13, 14 (supplemental authority). For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and for supplemental security income under Title XVI of the act on August 25, 2008, alleging disability beginning June 7, 2007. Her application was denied initially and upon reconsideration. Plaintiff then filed a timely request for an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on September 1, 2010. R. 42-85. The ALJ issued a decision unfavorable to Plaintiff on October 25, 2010. R. 23-36. Plaintiff appealed the ALJ's decision to the

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this case.

Appeals Council, which denied Plaintiff's request for review on February 24, 2012. R. 1-4. Plaintiff filed the instant complaint on March 19, 2012, asserting three grounds in opposition to the Commissioner's decision: (1) the ALJ did not adequately explain the rationale for her conclusions regarding Plaintiff's credibility; (2) the ALJ erred in giving great weight to the opinions of non-examining physicians without adequate explanation, and did not explain what weight was afforded the opinion of treating physicians; and (3) the ALJ failed to evaluate Plaintiff's severe impairment of obesity in her decision. Pursuant to the parties' consent, the matter was referred to the undersigned in accordance with 28 U.S.C § 636(c). Doc. 6.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5]
However, the district court will reverse the Commissioner's decision on plenary review if
the decision applies incorrect law, or if the decision fails to provide the district court with
sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by
reason of any medically determinable physical or mental impairment that can be
expected to result in death, or has lasted or can be expected to last for a continuous
period of not less than twelve months.[7] The impairment must be severe, making Plaintiff
unable to do her previous work, or any other substantial gainful activity which exists in
the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a
claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a
claimant does not have any impairment or combination of impairments which
significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)
(holding that the court must scrutinize the entire record to determine reasonableness of factual
findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider
evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R.
will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of
a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir.
1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.[12] Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[13] Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[14]

     The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[15] The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[16] The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[17]  However, the ALJ should

not exclusively rely on the Grids when "the claimant has a non-exertional impairment

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
    In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF FINDINGS AND EVIDENCE

The ALJ's findings may be summarized as follows.  (R. 23-36).  Plaintiff met the insured status requirements of the Act through June 30, 2008, and had not engaged in substantial gainful activity since June 7, 2007.   At the time of the hearing, she was 52 years old and had a GED.  Plaintiff was 5'1" tall and weighed 200 pounds.  She had past relevant work as a cashier/stocker.  Plaintiff was not taking any pain medication at the time of the hearing.  *See* R. 61.

---

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

At step two of the sequential evaluation, The ALJ determined that Plaintiff had the severe impairments of: (1) chronic obstructive pulmonary disease; (2) back pain, grade 1 anterolisthesis, stable lesion T12; (3) tennis elbow; and (4) obesity. The ALJ concluded that Plaintiff's medically determinable mental impairments of affective disorder and anxiety disorder were nonsevere, considering the four broad functional areas known as the Paragraph "B" criteria. The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets or equals the listings, taking into account Plaintiff's obesity.

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with the restrictions that she can occasionally stoop and crouch, should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and avoid hazards such as machinery and heights. In determining Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints regarding the limiting effects of her impairments. Plaintiff testified that she did some cooking, did no laundry and very little housework, and did not go to the grocery store. She testified that she spent about 80% of the day reclined, changing position after 30 minutes due to numbness. She testified that she could walk about 200 yards before her hips locked up. She no longer went fishing, and could not concentrate to do puzzles. She testified that tension causes pain in her neck, shoulders, and head.

The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC. The ALJ based this

conclusion on (1) lack of objective evidence verifying the limited daily activities that Plaintiff described; and (2) the degree of limitation described by Plaintiff was difficult to attribute to her medical condition in view of the relatively weak medical evidence and other factors.

With respect to the medical evidence, the ALJ noted that Plaintiff was treated in the emergency department and admitted in April 2008 for chest pain related to COPD. In August 2009, Plaintiff presented with complaints of back pain. An MRI performed a year earlier showed a lesion at the T12 level. Gregory Murad, M.D., performed a consultation and opined that Plaintiff's back pain and a reported urinary incontinence issue were not caused by the lesion. R. Exh. 12F, 13F. Treatment records from August through October 2009 revealed a grade 1-2 degenerative spondylolisthesis at LF-L5. An October 2009 exam related to shortness of breath noted Plaintiff's history of "COPD and ongoing tobacco abuse," chronic back pain status post laminectomy at L5 in 1991, and chronic right lower quadrant abdominal pain. Exh. 13F. A chest view revealed normal cardiomediastinal silhouette and lungs symmetrically aerated and clear, with no osseous abnormality. *Id.*

Plaintiff was treated by Gregory Murad, M.D. from September 2009 to February 2010. An MRI revealed an intradural lesion anterior to the distal cord at the T12 level, likely benign. Surgery was unlikely and the recommended course was to watch the lesion rather than intervene, with Plaintiff to contact the office should neurological symptoms develop. Examination revealed 5/5 muscle strength in all four limbs, normal muscle tone, and no atrophy. Plaintiff had full range of motion in arms and legs, and negative straight leg raising. She had normal cervical and lumbar range of motion.

Neurologically there was no decrease in sensation in the arms or legs, her toes were mute bilaterally, and she had a negative Patrick maneuver bilaterally. Exh. 15F.

Plaintiff was treated in January 2009 by Kaleeswari Arulselvam, M.D., for shortness of breath. Physical examination was essentially normal. Plaintiff was provided with smoking cessation counseling and a prescription for Combivent. She was prescribed Celexa for depression. February 2009 x-rays showed chronic changes suggesting obstructive airway disease without acute cardiopulmonary process. A March 2009 x-ray of the spine showed degenerative grade 1 spondylolisthesis at L5-S1 without significant change, and no pars defects. Exh. 10F, 11F.

In July 2010, Plaintiff was treated by James Atchison, D.O., for low back pain. The impression was chronic axial low back pain with grade 1 anterolisthesis and lumbar degenerative disk disease, spondylosis, and insomnia. Plaintiff had a normal affect, a normal gait, a normal motor examination with no muscle atrophy, full cervical range of motion, a slightly reduced lumbar range of motion, a normal sensory examination (except for decreased sensation at the L5 dermatone), and negative straight leg raises bilaterally. Dr. Atchison recommended steroid injections and physical therapy, and counseled Plaintiff on smoking cessation. Exh. 18F.[22]

The record did not include consultative examinations. The State Agency physician, Edward DeMiranda, M.D., reviewed the medical records and found that Plaintiff could perform light work with no climbing of ladders, ropes, or scaffolds.

---

[22]The Record includes medical records identified as Exhibit 14F, at 503-24. These records are not Plaintiff's, but are records for a different patient. There is nothing in the ALJ's decision that suggests these records were considered in the decision, and the parties do not reference these records. It appears they were included in the administrative record due to clerical error.

Plaintiff could occasionally climb ramps and stairs, stoop, and crouch. She could frequently balance, kneel, and crawl, and should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Exh. 8F. The ALJ afforded great weight to this opinion, as it was consistent with the objective medical evidence.

State Agency psychiatrist Steven Wise, Psy.D., reviewed Plaintiff's records in October 2008 and found insufficient evidence to proffer an opinion. Exh. 4F. The ALJ assigned great weight to this finding.

State agency psychiatrist Val Bee, Psy.D., reviewed Plaintiff's records in May 2009 and found that Plaintiff had mild restrictions on activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Dr. Bee concluded that these impairments were not severe. Exh. 9F. The ALJ assigned great weight to Dr. Bee's opinion.

In light of this medical evidence, the ALJ found Plaintiff's testimony and subjective statements regarding her pain and limitations to be partially credible, but not fully credible to the extent of establishing that her impairments are so severe as to preclude her from performing substantial gainful activity. The ALJ considered Plaintiff's testimony regarding her degree of limitation, but determined that her reported limited activities of daily living were outweighed by other factors in the record. In particular, the ALJ found Plaintiff's medical history to be "unremarkable" for establishing the presence of disabling impairments. The ALJ noted that Plaintiff continued to smoke despite physician's recommendations. She testified that she is not receiving mental health

treatment. In view of Plaintiff's treatment records and the opinions of the State Agency consultants regarding Plaintiff's limitations, the ALJ found Plaintiff's "stated symptoms inconsistent over that which would be expected based on the medical findings in the record." R. 35.

The ALJ found that Plaintiff could perform her past relevant work as a cashier/stocker, based on the testimony of VE Walter Todorowski that such work is light work that did not require the performance of activities precluded by Plaintiff's RFC. *Id*.

## IV. <u>DISCUSSION OF ISSUES PRESENTED</u>

### 1. Determination that chronic pain was not severe impairment

Plaintiff contends that the ALJ erred in evaluating her subjective complaints of pain. Plaintiff contends that the ALJ's credibility assessment was vague, and because the ALJ did not explicitly discredit Plaintiff's testimony and adequately explain her rationale, the Commissioner's decision should be reversed. Doc. 12.

In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *MacGregor v.*

*Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

In this case, the ALJ referenced the correct standard applicable to credibility determinations, and determined that Plaintiff's subjective complaints of pain were only partially credible. The ALJ explained that this conclusion was based on: (1) the lack of objective evidence verifying the extent of Plaintiff's limitations; and (2) the difficulty of attributing the degree of limitation described by Plaintiff to her medical condition, in view of the relatively weak medical evidence and other factors. The ALJ then reviewed all of the medical evidence in the record, including the opinions of Agency consulting physicians. After summarizing the records, the ALJ found Plaintiff's medical history to be "unremarkable" for establishing the presence of impairments of such severity to be disabling. In view of Plaintiff's "unremarkable" treatment records and the opinions of the State Agency consultants, the ALJ found Plaintiff's "stated symptoms inconsistent over that which would be expected based on the medical findings in the record," including the observations of the consultative examiners. R. 32-34.

Plaintiff argues that her complaints regarding the limiting effects of her pain have been consistent throughout the proceedings and are "supported by the record as a whole." Doc. 12. However, Plaintiff points to nothing specific in the medical records that undermines the ALJ's conclusion that her history is "unremarkable" for impairments that would produce pain of the disabling severity claimed by Plaintiff. On this record, the undersigned concludes that the record does not reflect objective medical evidence that confirms the severity of Plaintiff's alleged pain, or a condition of a severity that would give rise to her alleged disabling pain. *See Hand*, 761 F.2d at 1549. In addition to the lack of medical evidence, the ALJ considered other factors in the record including

the fact that Plaintiff does not take pain medication, and the opinion of State Agency consultants regarding the extent of Plaintiff's limitations.  The Court therefore concludes that the ALJ articulated explicit and adequate reasons for rejecting Plaintiff's allegation of disabling pain, and that such reasons are supported by substantial evidence in the record.

### 2.  Weight afforded to treating and State Agency physicians' opinion

Plaintiff contends that the ALJ erred in establishing Plaintiff's RFC because the ALJ gave great weight to the opinions of the non-examining physicians without explanation, and did not explain what weight she was giving Plaintiff's treating physician and why.  Docs. 12, 13 (supplemental authority citing *Winschel v. Comm'r*, 631 F.3d 1176 (11th Cir. 2011); and *Richter v. Comm'r*, 379 Fed. Appx. 959 (11th Cir. 2010) (unpublished)).  Plaintiff argues that Dr. Atchison diagnosed "grade I anterolisthesis," but the State Agency consultant, Dr. DeMiranda, did not consider that impairment in assessing Plaintiff's limitations.  Plaintiff contends that the opinions of the State Agency psychiatrists are in conflict with each other, and in conflict with the ALJ's finding that Plaintiff "can pay attention for 15 minutes and does not finish what she starts."  Doc. 12.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[23]  If a treating physician's opinion on the nature and severity of a

---

[23] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

The ALJ may discount a treating physician's opinion or report regarding an inability to  work if it is unsupported by objective medical evidence or is wholly conclusory.[25]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments

With regard to medical opinions of non-treating sources,  "the ALJ [is] required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[26]

As the Commissioner points out, the record does not include any treating physician opinions on the effect of Plaintiff's impairments on her physical or mental functionality.  Thus, there was no reason for the ALJ to discuss the weight that should be afforded to a treating physician's opinion regarding Plaintiff's inability to work.  The ALJ did identify and discuss Dr. Atchison's diagnostic impressions, as well as the findings of other physicians who examined Plaintiff.

Dr. DeMiranda prepared his consultative RFC in April 2009, and specifically referenced Plaintiff's back impairment and the medical records documenting such

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[26] Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987.)

impairment.  Exh. 8F.  Dr. Atchison examined Plaintiff in July 2010, and thus his finding

of "grade 1 anterolisthesis" could not have been included in Dr. DeMiranda's April 2009

assessment.  *See id.*; Exh. 18F.   Moreover, Plaintiff points to nothing in the record –

including Dr. Atchison's report – that contradicts Dr. DeMiranda's assessment of her

functional limitations stemming from low-back pain.  The ALJ stated that Dr.

DeMiranda's opinion was afforded great weight because it was consistent with the

objective medical evidence of record.  Thus, the ALJ both explained the weight afforded

the opinion and gave a reason for such weight.

Plaintiff contends that the State Agency consulting psychiatrists opinions are at

odds with each other and with the ALJ's "finding" that Plaintiff "can pay attention for 15

minutes and does not finish what she starts."  This information was derived from

Plaintiff's self-report of her functional limitations in an Agency form, Exh. 6E.   The ALJ

concluded that Plaintiff had only "mild" limitations in concentration, persistence, and

pace, based on her assessment of Plaintiff's self-report and the opinions of the

consulting physicians, one of whom found insufficient evidence in the record to proffer

an opinion as to whether Plaintiff has a mental limitation, and the other of whom opined

that Plaintiff had only "mild" limitations.  Exh. 4F, 9F.  The ALJ explained that these

opinions were afforded "great weight" because they were consistent with the objective

medical evidence of record.  Thus, the ALJ both explained the weight afforded the

opinions and gave a reason for such weight.  Read in the context of the entire decision,

it is clear that the ALJ did not fully credit Plaintiff's self-report regarding her

concentration, persistence, and pace.  Plaintiff points to nothing in the record that

contradicts the ALJ's conclusion that Plaintiff's mental limitations were, at most, "mild."

The Court agrees with the Commissioner that Plaintiff's reliance on *Winschel* is unfounded.  In *Winschel*, the ALJ did not explain the weight afforded to a treating physician's opinion, which was in conflict with the ALJ's conclusion, and therefore a remand was warranted.  *Winschel*, 631 F.3d at 1179.  As noted, there is no treating physician opinion in this case that addresses Plaintiff's functional limitations.  As to the asserted *Winschel* error stemming from the ALJ's RFC assessment, the case also affords Plaintiff no relief.  In *Winschel,* the ALJ found that the plaintiff had *moderate* limitations in concentration, persistence, and pace, but did not include these limitations in the hypothetical to the VE.  *Winschel*, 631 F. 3d at 1180.  In reversing and remanding the case, the Eleventh Circuit noted that the ALJ should have explicitly included this limitation in the hypothetical to the VE—not because there is a bright-line rule that such limitations must always be included, but because "the ALJ did not indicate that medical evidence suggested [Plaintiff's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical."  *Id.* at 1181.  This case is distinguishable from *Winschel*, because the ALJ concluded based on the evidence that Plaintiff's ability to perform her past relevant work was unaffected by her mild mental limitations.  Substantial evidence supports the ALJ's determination of this issue.[27]

---

[27] Plaintiff also contends, without elaboration or support, that the ALJ erred in failing to consider her testimony that her past relevant work as a cashier/stocker required her to lift up to 75 pounds for two thirds of the day, and thus the work is not within the "light" category.  Doc. 12.  As the Commissioner points out, the ALJ may rely on the testimony of a VE to determine whether Plaintiff can perform past relevant work as actually performed *or* as generally performed in the national economy.  *See* 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2).  Plaintiff also contends that the ALJ should have addressed the fact that she chose her disability onset date after a one day effort to work at McDonald's.  Plaintiff does not explain how this fact would or should have altered the ALJ's decision.

### 3. Evaluation of obesity as severe impairment

Lastly, Plaintiff contends that the ALJ failed to fully evaluate her obesity as a severe impairment. Plaintiff argues that the ALJ did not take her obesity, together with her other impairments, into consideration in finding that she had the RFC to perform light work. Plaintiff contends that the ALJ failed to properly follow Social Security Ruling 02-1p in assessing Plaintiff's RFC. Doc. 12.

Social Security Ruling 02-1p guides the evaluation of obesity in disability claims, and was published following the deletion of Listing 9.09, Obesity, from the Listing of Impairments. *See* 67 Fed. Reg. 57859, 57860-61 (Sept. 12, 2002). The SSR recognizes that obesity is a risk factor that increases the chance of developing impairments in other body systems, including the cardiovascular, respiratory, and musculoskeletal body systems. *Id*. The SSR provides that the ALJ should consider the effect of obesity at each step of the sequential evaluation:

> [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.... [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Id*. at 57861-62.

The ALJ specifically referenced SSR 02-1p and the standards governing the assessment of obesity in the disability determination. The ALJ found that Plaintiff's obesity was a severe impairment at step two of the sequential analysis. The ALJ concluded that, in view of the record, Plaintiff's obesity, alone or in combination with other impairments, did not meet or equal a listed impairment. Further, in evaluating

Plaintiff's RFC at step four, the ALJ specifically noted that she took into account the effects of Plaintiff's obesity and the effects of her obesity in combination with her other impairments on Plaintiff's functioning.  R. 28, 31.

The ALJ's RFC determination accounted for Plaintiff's obesity and her other impairments by limiting Plaintiff to light work with additional postural and environmental limitations.  R. 30.  Plaintiff points to nothing in the record that supports a conclusion that her obesity impairs her ability to work beyond the limitations assessed by the ALJ. Accordingly, the record supports a conclusion that the ALJ fully and properly considered Plaintiff's obesity, and the functional limitations arising therefrom, in combination with Plaintiff's other impairments in evaluating her RFC. As such, Plaintiff's argument that the ALJ erred by failing to address Plaintiff's obesity as required by the Social Security Ruling has no merit.

## VI.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the decision of the Commission denying benefits is **AFFIRMED.** The clerk is directed to enter final judgment and close the file.

**DONE AND ORDERED** this 22nd day of March 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge